**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| JANSSEN PRODUCTS, L.P., and PHARMA MAR, S.A. | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Lead Case No. 1:24-cv-07319 |
| EVER VALINJECT GMBH, NEXUS PHARMACEUTICALS, LLC, SHANGHAI HAOYUAN CHEMEXPRESS CO., LTD, and RUYUAN HEC PHARM CO., LTD., | ) ) ) ) ) (Consolidated with ) ) Case No. 1:24-cv-09441) ) |
| Defendants. | ) ) Judge: The Hon. Sunil R. Harjani ) ) Magistrate: The Hon. Laura K. McNally ) ) |

<u>**ORDER**</u>

## I.    Background

This pharmaceutical patent infringement case arises out of Defendant EVER Valinject GmbH's submission of a New Drug Application (NDA) to the United States Food and Drug Administration for approval to sell a generic version of Plaintiff Pharma Mar, S.A.'s Yondelis® drug product, used to treat rare soft-tissue cancers. Plaintiffs allege that EVER's submission of its NDA for a trabectedin pharmaceutical product infringes Plaintiff's United States Patent No. 8,895,555 (the '557 Patent or the Asserted Patent). As part of the discovery process, Defendants seek documents and deposition testimony from four foreign nonparties in this case: three named inventors of the '557 Patent, and one entity.

Defendants filed the instant motion asking the Court to issue four Letters of Request (also known as Letters Rogatory) for international judicial assistance pursuant to the 1970 Hague Evidence Convention and 28 U.S.C. 1781(b)(2): two Letters to individuals in the Netherlands, Dr. Jacob Hendrik Beinjen and Dr. Bastiaan Nuijen, one Letter to the Netherlands Cancer Institute, and one Letter to Dr. Maria Tobio Barreira, who is located in Spain. (Dkt. 247.) Defendants have attached their proposed Letters of Request to their memorandum in support of their motion. (Dkt. 248, Exh. 1-4.) The Letters are not identical but all seek similar information concerning "inventorship, research, development, analytical studies and results around the invention(s) that are the subject matter of the Asserted Patent . . . ." The Letters contain approximately 20 broad requests for production for each of the three Dutch entities and also identify 16 deposition topics for each of the three doctors. (*Id.*)

While Plaintiffs do not challenge Defendants' right to seek discovery in this case using Hague Convention procedures, they oppose the instant motion. (Dkt. 255: Pl. Mem. in Opposition, at 1.) Specifically, Plaintiffs argue that the requests in the Letters are overbroad and duplicative of less burdensome means of discovery, and they seek irrelevant or otherwise unimportant information regarding the issues of infringement and validity. They therefore "disturb the comity between the United States, on the one hand, and the Netherlands and Spain on the other." (*Id.*) The Court agrees and denies Defendants' request.

## II.     The Hague Convention Procedures for Obtaining Evidence

The Hague Convention procedures are available to "facilitate the gathering of evidence by the means authorized by the Convention." *Societe National Industrielle Aeropatiale v. United States District Court for the Southern District of Iowa*, 482 U.S. 522, 540 (1987). The procedures include letters rogatory issued by United States District Courts and submitted to the foreign judicial authority of other signatory nations. *See id.* "American courts, in supervising pretrial proceedings, should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position." *Id.* at 546. Therefore, "[w]hen it is necessary to seek evidence abroad, however, the district court must supervise pretrial proceedings particularly closely to prevent discovery abuses." *Id.*

American courts should also pay attention to issues of comity and "take care to demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of its operations, and for any sovereign interest expressed by a foreign state." *Id.* "In performing a comity analysis, a court should consider: (1) the importance to the litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance would undermine important interests of the state where the information is located." *Dyson, Inc. v. SharkNinja Operating LLC*, No. 1:14-CV-0779, 2016 WL 5720702, at *2 (N.D. Ill. Sept. 30, 2016), *objections overruled,* No. 14-CV-779, 2017 WL 446042 (N.D. Ill. Feb. 2, 2017). While Defendants' Letters fall short on nearly all of these elements, the Court addresses those that are particularly problematic: importance of the information requested, specificity of the request, and alternative means. These alone provide grounds for denying the motion.

## III.     Discussion

While each side offers general arguments about why the comity factors do or do not weigh in favor of issuing the Letters, neither side offers the sort of request-by-request analysis that would best assist the Court in deciding the motion. Nevertheless, after considering the evidence and arguments the parties do offer, the Court concludes that comity weighs against granting Defendants' requests as drafted.

### A.     Importance to the Litigation

Defendants argue generally that all the discovery requests are important to the litigation because the non-party inventors are best suited to provide facts relevant to the "key issues" of infringement and invalidity. (Def. Mem. in Support at 9.) They describe such facts as including "the conception and reduction to practice of the invention(s) claimed in the Asserted Patent, which include research and development of a trabectedin formulation, including excipients considered, evaluated and tested, development of the trabectedin formulation claimed in the Asserted Patent." *Id.*

3

Defendants do not identify which particular discovery requests and deposition topics correspond to the facts they seek to prove.

Plaintiffs point to two categories of requests they contend seek evidence of little or no importance to the litigation because they are not tailored to the claimed inventions in the Asserted Patent: questions that seek information about foreign patents that are "counterparts" to the '557 patent,[1] and various topics that ask questions about "any" Trabectedin pharmaceutical composition. (Pl. Resp. at 3-4, *citing* D.I. 248.03-248.04 (topic 3; document requests 1-2, 11, 16); D.I. 248.05 (topic 3); D.I. 248.06 (document requests 1-2, 12, 17).)

Regarding the foreign counterparts, Defendants justify the request by arguing that "portions of the foreign patent proceedings, foreign patent applications or the foreign patents themselves may be relevant evidence on the factual issues in a United States patent action." (Dkt. 257: Def. Reply in Support of Motion at 3.) Defendants' explanation is vague and entirely speculative as to the importance of "foreign counterpart" patents. Defendants do not identify any foreign patents, let alone suggest how specific issues in those patent applications bear on the patent here. Nor do they offer the responding parties any guidance about how to determine what foreign patents are responsive to this request. Balancing the burdens of these requests against their asserted importance to the litigation, the Court is unpersuaded by Defendants' explanations.

Plaintiffs also argue that Defendants' requests for documents and deposition topics for information about trabectedin and trabectedin-containing formulations are not sufficiently important to the litigation because they are not tailored to the subject matter

---

[1] For example, the first two requests for production to Dr. Beijnen ask for "(1) each document and communication concerning the prosecution of the Asserted Patent and any Foreign Counterparts including documents and things provided by You to the Netherlands Cancer Institute and Pharma Mar, such as non-published literature or samples of any Trabectedin pharmaceutical composition" and "Any declarations provided by You concerning the prosecution of the Asserted Patent and any Foreign Counterparts." The requests provide, "The term 'Foreign Counterpart(s)' means and [sic] non-U.S. applications or patents corresponding to or claiming priority to any of the Patents-in-Suit or Related Applications." Patents-in-Suit is not defined. Related Applications is not defined.

claimed in the '557 Patent. Instead, claim Plaintiffs, the requests capture trabectedin-containing formulations not relevant to the '557 Patent. In reply, Defendants address the relevance of trabectedin to the disputed issues in the case. Relevance is not enough, however; to preserve comity, the requesting party must also show that the information is important to the litigation. *See, e.g., Motorola Solutions, Inc. v. Hytera Communications Corp.*, 365 F.Supp.3d 916, 924-25, 929 (N.D.IL 2019) (Recognizing that importance to the litigation is a separate consideration from relevance under both Federal Rules and comity factors). Defendants here fail to adequately address the importance of the other formulations to the litigation. Absent a clear articulation of that importance, the Court must conclude that Defendants have not met this element of the comity inquiry.

## B.      Specificity of the Requests

Separately, the Letters fail the comity inquiry because the requests are vast and overbroad. Defendants offer the *ipse dixit* that the Letters are "tailored to understand the inventors' work concerning research into and development of a trabectedin formulation which would have culminated in the subject matter of the invention(s) claimed in the Asserted Patent." (Def. Mem. at 12.) It is difficult to imagine a more broadly worded set of requests than those included here, many of which could implicate the foreign doctors' and NCI's work and research into subject matters well beyond the Asserted Patent. Simply put, the Court sees no grounds for concluding these sweeping requests are narrowly tailored, and Defendants fail to offer the types of specific information that rebut this conclusion.

## C.      Alternative Means

In Pharma Mar's production, Defendants have already obtained lab books and other records of the three foreign inventors. Defendants do not explain in any detail how the materials sought here are different from the materials already obtained, nor do they identify why those materials are necessary for their defense of this case.

Similarly, Defendants fail to account for the fact that one of the four inventors of the subject patent still works at Pharma Mar: Defendants do not explain in any level of detail what specific information the three foreign inventors would be expected to have

that would be different from the information already provided by the fourth inventor. Nor do they explain in any detail why those materials, if they exist, are important for Defendants' defense of this case.

In sum, Defendants have failed to demonstrate that the information being sought here has not already been obtained through the alternate means of the Pharma Mar production.

## IV.     Timeliness

Finally, a word about timing. Fact discovery in this case closes on December 2, 2025. There is almost certainly no possibility that the Letters Rogatory process could be completed by that deadline, even under optimal conditions: narrow, specific requests made with the all parties' consent. But those are not the conditions here. These requests are all but guaranteed to spawn legal challenges in Spain and/or the Netherlands. With comity concerns top of mind, the Court is mindful of the work it will create for foreign legal systems if these Letters are issued. Because the case schedule would make that work futile, the Court must exercise restraint.

Defendants' motion is denied.

**SO ORDERED** this 21st day of October, 2025.


ENTER:

_____

**LAURA K. MCNALLY**

**United States Magistrate Judge**

6